**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NOPRING PAULINO PENULIAR,
                    *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                    *Respondent.*

No. 03-71578

Agency No.
A44-948-659

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

On Remand from the United States Supreme Court

Filed April 22, 2008
Amended June 10, 2008

Before: James R. Browning, Harry Pregerson, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Pregerson

**COUNSEL**

Joel S. Feldman, Paul J. Zidlicky, and Melanie Jo Triebel, Sidley Austin LLP, Chicago, Illinois, for the petitioner.

Jennifer Paisner, Office of Immigration Litigation, U.S. Department of Justice, Civil Division, Washington, D.C., for the respondent.

**ORDER**

The Opinion filed April 22, 2008, slip op. 4219, is amended as follows:

1. At slip op. 4226-27, replace the two paragraphs that begin <We have construed . . .> and end <. . . sought to distinguish for heightened punishment and other crimes." *Id.*> with <We have construed 18 U.S.C. § 16 as requiring more than mere negligent or reckless conduct. *See Fernandez-Ruiz Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc) ("[N]either recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a "crime of violence under § 16.") (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004)); *see also Leocal*, 543 U.S. at 11-13 ("Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction

between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes.").>.

2.  At slip op. 4228, replace the sentences that begin <Many California vehicle violations . . .> and end <. . . is broader than a "crime of violence" as defined by 18 U.S.C. § 16.> with <This explanation by its terms defines the mens rea for evading an officer as "reckless." Moreover, it allows proof of that mens rea by showing merely that the defendant has "committed three Vehicle Code violations." Many California Vehicle Code violations require, at most, negligent disregard for the safety of persons or property. In other words, "willful or wanton disregard," as defined by California Vehicle Code § 2800.2(b), is broader than the traditional *mens rea* required under *Fernandez-Ruiz* and *Leocal*. Because the state statute requires only reckless conduct, and because it would be possible to engage in "willful or wanton disregard for the safety of persons or property" by negligently committing three Vehicle Code violations, Section 2800.2 is broader than a "crime of violence" as defined by 18 U.S.C. § 16.>.

3.  At slip op. 4228, keep footnote 3 following the sentence that ends <. . . negligent disregard for the safety of persons or property.>.

4.  At slip op. 4229-30, replace the sentences that begin <The judicially noticeable documents . . .> and end <. . . is plainly insufficient to establish that Penuliar pled guilty to reckless conduct constituting a "crime of violence."> with <The judicially noticeable documents in the record are insufficient to establish whether Penuliar pled guilty to conduct that was more than merely reckless or negligent. The information charging Penuliar with evading an officer contains nothing more than the generic statutory language from California Vehicle Code § 2800.2(a). But as discussed above, the statute is broader than the generic

"crime of violence" under 18 U.S.C. § 16. Thus, the abstract of judgment, which simply recites that Penuliar pled guilty to the charge, is plainly insufficient to establish that Penuliar pled guilty to conduct constituting a "crime of violence.">.

5. At slip op. 4230, keep footnote 5 following the sentence that ends <. . . the generic statutory language from California Vehicle Code § 2800.2(a).>.

Future petitions for panel rehearing and rehearing en banc will be entertained. *See* General Order 5.3(a).

---

**OPINION**

PREGERSON, Circuit Judge:

Nopring Paulino Penuliar petitions for review of a decision of the Board of Immigration Appeals ("BIA"). Penuliar, a lawful permanent resident, pled guilty to two counts of unlawful driving or taking of a vehicle in violation of California Vehicle Code § 10851(a), and one count of evading an officer in violation of California Vehicle Code § 2800.2(a). Classifying both convictions as "aggravated felonies" under the Immigration and Nationality Act ("INA"), an Immigration Judge ("IJ"), affirmed by the BIA, found Penuliar ineligible for cancellation of removal and voluntary departure, and ordered that Penuliar be deported pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

We granted Penuliar's petition for review, *Penuliar v. Gonzales*, 435 F.3d 961 (9th Cir. 2006), but the Supreme Court vacated our decision, *Gonzales v. Penuliar*, 127 S. Ct. 1146 (2006), and remanded to us for further proceedings in light of *Gonzales v. Duenas-Alvarez*, 549 U.S. ___, 127 S.Ct. 815 (2007).

Because we again conclude that Penuliar's convictions do not constitute "aggravated felonies" under the INA, we grant his petition for review.

BACKGROUND

Nopring Paulino Penuliar, a citizen of the Philippines, was admitted to the United States on June 12, 1995, as a lawful permanent resident. On June 30, 2000, Penuliar pled guilty to one count of unlawful driving or taking of a vehicle in violation of California Vehicle Code § 10851(a), and was sentenced to two years imprisonment. On December 13, 2000, Penuliar pled guilty to another count of unlawful driving or taking of a vehicle in violation of California Vehicle Code § 10851(a), and one count of evading an officer in violation of California Vehicle Code § 2800.2(a). He was sentenced to three years' imprisonment for each charge, to be served concurrently.

While serving his sentence in state prison, the Immigration and Naturalization Service ("INS")[1] served Penuliar with a notice to appear.[2] In the notice to appear, the INS alleged that Penuliar was removable for being convicted of "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprison-

---

[1]The INS ceased to exist on March 1, 2003, when its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. However, we refer to the agency as the INS here because the proceedings in this case were instigated before the transfer.

[2]The initial notice to appear charged that Penuliar was removable under 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been convicted of "an offense relating to obstruction of justice," an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(S). The IJ ruled that Penuliar's convictions did not constitute offenses "relating to obstruction of justice," and the government did not appeal that decision to the BIA. Accordingly, that decision is not before us. The remaining charges, which are before us, were included in an amended notice to appear.

ment [is] at least one year," an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F). The INS also alleged that Penuliar was removable for being convicted of "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year," an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G).

At Penuliar's removal hearing, the government introduced into evidence a felony complaint charging Penuliar with, *inter alia*, one count of unlawful driving or taking of a vehicle in violation of California Vehicle Code § 10851(a), and a corresponding abstract of judgment showing that Penuliar pled guilty to that count. The government also introduced a criminal information charging Penuliar with, *inter alia*, one count of unlawful driving or taking of a vehicle in violation of California Vehicle Code § 10851(a), and one count of evading an officer in violation of California Vehicle Code § 2800.2(a), and a corresponding abstract of judgment showing that Penuliar pled guilty to both counts. Finally, the government introduced a probation report detailing the conduct underlying the charges in the criminal information.

Based on this evidence, the IJ concluded that Penuliar's two convictions for unlawful driving or taking of a vehicle were "theft offense[s]" under 8 U.S.C. § 1101(a)(43)(G), and that Penuliar's conviction for evading an officer was a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F). Accordingly, the IJ ruled that Penuliar was removable as an "aggravated felon" under 8 U.S.C. § 1227(a)(2)(A)(iii), and therefore ineligible for cancellation of removal and voluntary departure. *See* 8 U.S.C. §§ 1229b(a)(3), 1229c(a)(1).

On March 31, 2003, the BIA summarily affirmed the decision of the IJ. *See* 8 C.F.R. § 1003.1(e)(4). Penuliar timely filed this petition for review.

## JURISDICTION AND STANDARD OF REVIEW

This court lacks jurisdiction to review a final order of removal against an alien who has committed an aggravated

felony. *See* 8 U.S.C. § 1252(a)(2)(C). Nonetheless, "[b]ecause the issue in this appeal is whether [the petitioner] committed an aggravated felony, and because we have jurisdiction to determine our own jurisdiction, the jurisdictional question and the merits collapse into one." *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000) (citation omitted).

We review de novo whether a particular offense is an aggravated felony. *Id.*

## DISCUSSION

To determine whether a conviction is an "aggravated felony" under the INA, we employ the two step test set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Chang v. I.N.S.*, 307 F.3d 1185, 1189 (9th Cir. 2002). First, "we look to the statute under which the person was convicted and compare its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43)." *Id.* "Under this 'categorical approach,' an offense qualifies as an aggravated felony 'if and only if the full range of conduct covered by the [criminal statute] falls within the meaning of that term.' " *Id.* (quoting *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999)).

However, when the statute of conviction reaches both conduct that would constitute an aggravated felony and conduct that would not, we follow a "modified categorical approach." *Chang*, 307 F.3d at 1189. Under this approach, we conduct "a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime." *Id.* "[W]e do not, however, look to the particular facts underlying the conviction." *Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1154 (9th Cir. 2003) (quoting *Ye*, 214 F.3d at 1132).

## I.   Evading an Officer

### A.   Categorical Approach

**[1]** Under 8 U.S.C. § 1101(a)(43)(F), the term "aggravated felony" means "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." Title 18 U.S.C. § 16, in turn, defines the term "crime of violence" to mean:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

**[2]** We have construed 18 U.S.C. § 16 as requiring more than mere negligent or reckless conduct. *See Fernandez-Ruiz Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc) ("[N]either recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a "crime of violence under § 16.") (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004)); *see also Leocal*, 543 U.S. at 11-13 ("Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes.").

**[3]** California Vehicle Code § 2800.2(a) makes it a crime "[i]f a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property." The statute further provides that "willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or

attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." Cal. Veh. Code § 2800.2(b).

**[4]** As defined by subsection (b), "willful or wanton disregard" exists if a driver commits three Vehicle Code violations. As one court explained,

> [a]lthough Vehicle Code section 2800.2 uses the phrase 'willful or wanton disregard for the safety of persons or property' to describe an element of reckless evading, the statute defines this element so that it may be satisfied by proof of property damage or by proof *that the defendant committed three Vehicle Code violations*.

*People v. Pinkston*, 112 Cal. App. 4th 387, 392 (Ct. App. 2003) (emphasis added). This explanation by its terms defines the mens rea for evading an officer as "reckless." Moreover, it allows proof of that mens rea by showing merely that the defendant has "committed three Vehicle Code violations." Many California Vehicle Code violations require, at most, negligent disregard for the safety of persons or property. In other words, "willful or wanton disregard," as defined by California Vehicle Code § 2800.2(b), is broader than the traditional *mens rea* required under *Fernandez-Ruiz* and *Leocal*. Because the state statute requires only reckless conduct, and because it would be possible to engage in "willful or wanton disregard for the safety of persons or property"[3] by negli-

---

[3]For instance, a traffic violation point can be assessed where a driver owns and operates a car that is "(1) [n]ot registered or for which any fee has not been paid under [the vehicle] code," "(2) [n]ot equipped as required in [the vehicle] code," or "(3) [n]ot in compliance with the size, weight, or load provisions of [the vehicle] code." Cal. Veh. Code §§ 12810(f), 40001(b)(1)-(3). In addition, a traffic point may be assessed for, "[e]xcept as provided in subdivision (i) [exempting certain conduct where the driver is not the owner of the vehicle], any other traffic conviction involving the safe operation of a motor vehicle upon the highway." *Id.* § 12810(f).

gently committing three Vehicle Code violations, Section 2800.2 is broader than a "crime of violence" as defined by 18 U.S.C. § 16.

The government relies on *United States v. Campos-Fuerte*, 357 F.3d 956 (9th Cir. 2004), in which we held that the offense of evading an officer under the 1992 version of California Vehicle Code § 2800.2 was a "crime of violence" under 18 U.S.C. § 16. In reaching this conclusion, we relied on California case law construing "willful or wanton misconduct" as "intentional wrongful conduct." *Id*. at 961. But the meaning of "willful or wanton disregard" in section 2800.2 has since been amended to include the commission of three California Vehicle Code violations. *See Pinkston*, 112 Cal. App. 4th at 391 ("Vehicle Code section 2800.2, subdivision (b) . . . was added to section 2800.2 in 1996."). Because *Campos-Fuerte* relied on the prior meaning of "willful or wanton" in reaching its result, it is not binding in the present case.

**[5]** Accordingly, we conclude that a conviction for evading an officer in violation of California Vehicle Code § 2800.2 does not categorically qualify as a "crime of violence" within the meaning of 18 U.S.C. § 16.

### B.   Modified Categorical Approach

In concluding that Penuliar's conviction for evading an officer was a "crime of violence" under 18 U.S.C. § 16, and hence an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F), the IJ relied on three pieces of evidence. The IJ relied on (1) the November 21, 2000, criminal information charging Penuliar with evading an officer in violation of California Vehicle Code § 2800.2(a), (2) an abstract of judgment showing that Penuliar pled guilty to that charge, and (3) a probation officer's report.[4] The government did not introduce either

---

[4]On appeal, however, the government abandons any reliance on the probation officer's report to establish that Penuliar was convicted of a "crime of violence" under the modified approach.

Penuliar's plea agreement or a transcript of Penuliar's plea proceeding into the record. Instead, the government argues that the information and abstract of judgment were sufficient for the IJ to determine that Penuliar's conviction for evading an officer was a "crime of violence" under 18 U.S.C. § 16. We disagree.

[6] The judicially noticeable documents in the record are insufficient to establish whether Penuliar pled guilty to conduct that was more than merely reckless or negligent. The information charging Penuliar with evading an officer contains nothing more than the generic statutory language from California Vehicle Code § 2800.2(a).[5] But as discussed above, the statute is broader than the generic "crime of violence" under 18 U.S.C. § 16. Thus, the abstract of judgment, which simply recites that Penuliar pled guilty to the charge, is plainly insufficient to establish that Penuliar pled guilty to conduct constituting a "crime of violence." *See United States v. Contreras-Salas*, 387 F.3d 1095, 1098 (9th Cir. 2004) (holding that defendant was not convicted of a crime of violence where information and judgment of conviction failed to

---

[5]Count three in the November 21, 2000, Information states:

> On or about October 18, 2000, in the County of Los Angeles, the crime of EVADING AN OFFICER, WILLFUL DISRE-GARD, in violation of VEHICLE CODE SECTION 2800.2(a), a Felony, was committed by NOPRING PAULINO PENULIAR, who did wilfully and unlawfully, while operating a motor vehicle and with the intent to evade, flee and otherwise attempt to elude a pursuing peace officer's motor vehicle while all of the following conditions existed: the peace officer's motor vehicle exhibited at least one lighted red lamp visible from the front and the defendant(s) saw and reasonably should have seen the lamp, the peace officer's motor vehicle was sounding its siren as was reasonably necessary, the peace officer's motor vehicle was distinctively marked, the peace officer's motor vehicle was operated by a peace officer.

> It is further alleged that the defendant(s) drove with a willful and wanton disregard for the safety of persons and property.

establish whether defendant was convicted of "volitional, reckless, or negligent conduct").

Finally, insofar as the IJ relied on the probation report to establish that Penuliar pled guilty to a "crime of violence," he was in error. *See, e.g.*, *United States v. Vidal*, 504 F.3d 1072, 1087 n.25 (9th Cir. 2007) (en banc) (citing *United States v. Franklin*, 235 F.3d 1165, 1171 (9th Cir. 2000) (explaining that a presentence report, even when considered in conjunction with charging papers, is insufficient to establish what facts a defendant admitted in his plea).

[7] Accordingly, we conclude that the BIA erred in affirming the IJ's decision that Penuliar's conviction under California Vehicle Code § 2800.2(a) was a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F).

## II.   Unlawful Driving or Taking of a Vehicle

### A.   Categorical Approach

[8] Under 8 U.S.C. § 1101(a)(43)(G), the term "aggravated felony" means "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." This circuit defines a "theft offense" under § 1101(a)(43)(G) to mean "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *See, e.g.*, *Vidal*, 504 F.3d at 1077 (quoting *Martinez-Perez v. Gonzales*, 417 F.3d 1022, 1026 (9th Cir. 2005)).

[9] Under California Vehicle Code § 10851(a), a person is guilty of unlawful driving or taking of a vehicle if he or she

> drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent

> either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or . . . is *a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing* . . . .

Cal. Veh. Code § 10851(a) (emphasis added). As the statute makes plain, California Vehicle Code § 10851(a) includes accessory and accomplice liability. We originally found in *Penuliar v. Gonzales*, 435 F.3d 961 (9th Cir. 2006), that the broad nature of aiding and abetting liability under California law precluded a finding that § 10851(a) was a generic "theft offense," but the Supreme Court disagreed, holding that a generic "theft offense" includes the crime of aiding and abetting. *See Duenas-Alvarez*, 127 S.Ct. at 820. In so holding, however, the Court expressly declined to address whether § 10851(a) is overbroad because it extends liability to accessories after the fact. *Id.* at 822-23. Accordingly, we granted en banc review in *United States v. Vidal* to resolve the question that the Supreme Court declined to address in *Duenas-Alvarez*.

**[10]** On October 10, 2007, we gave our answer: A conviction under § 10851(a) does not categorically qualify as a theft offense because it extends liability to accessories after the fact for post-offense conduct. *Vidal*, 504 F.3d at 1077. We explained that, unlike a principal, an accomplice, or an accessory before the fact, an accessory after the fact "had no part in causing the crime," *id.* at 1078, and thus lacked the "criminal intent to deprive the owner of the rights and benefits of ownership," *id.* at 1080 (quotation marks and citation omitted). Accordingly, we concluded that an accessory after the fact cannot be held culpable of generic theft within the meaning of 8 U.S.C. § 1101(a)(43)(G).

**[11]** Following *Vidal*, a conviction under § 10851(a) does not qualify as a "theft offense" under the categorical

approach. Therefore, we must now proceed "to the modified categorical approach to determine if the record unequivocally establishes that [Penuliar] was convicted of the generically defined crime, even if the statute defining his crime is overly inclusive." *Id.* at 1086 (quotation marks and citation omitted).

## B. Modified Categorical Approach

In concluding that Penuliar committed a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G), the IJ relied on two separate convictions under California Vehicle Code § 10851(a). For the first conviction, the IJ relied on a felony complaint, dated June 1, 2000, charging Penuliar with unlawful driving or taking of a vehicle in violation of California Vehicle Code § 10851(a), and an abstract of judgment showing that Penuliar pled guilty to that charge on June 30, 2000. For the second conviction, the IJ relied on a criminal information, dated November 21, 2000, charging Penuliar with another count of unlawful driving or taking of a vehicle in violation of California Vehicle Code § 10851(a), and an abstract of judgment showing that Penuliar pled guilty to that charge on December 13, 2000.[6] As was the case with Penuliar's conviction for evading an officer under California Vehicle Code § 2800.2, the government did not submit Penuliar's actual plea agreement or a transcript of the plea proceeding.

[12] The government argues that because both counts of unlawful driving and taking of a vehicle describe Penuliar as a principal, and because Penuliar pled guilty to both counts, the charging documents and the abstract of judgment are sufficient to establish that Penuliar was convicted of a "theft

---

[6]The IJ also relied on a probation officer's report that details the facts underlying Penuliar's December 13, 2000, conviction for unlawful driving or taking of a vehicle. However, as previously discussed, the IJ's reliance was misplaced insofar as he used the probation officer's report to establish that Penuliar pled guilty to conduct described therein. *See Vidal*, 504 F.3d at 1087, n.25.

offense" under 8 U.S.C. § 1101(a)(43)(G). Again, we dis-
agree. The charging documents for both convictions only cite
the generic statutory language from § 10851(a) for unlawful
driving or taking of a vehicle under California law, charging
Penuliar with "unlawfully driv[ing] and tak[ing] a certain
vehicle . . . then and there the personal property of [another]
without the consent of and with intent, either permanently or
temporarily, to deprive the said owner of title to and posses-
sion of said vehicle."[7] As we explained in *Vidal*:

> [A]n indictment that merely recites the language of
> the statute . . . is insufficient to establish the offense
> as generic for purposes of a modified categorical
> analysis. We have repeatedly held that charging doc-
> uments are insufficient alone to prove the facts to
> which [the defendant] admitted. When, as here, the
> statute of conviction is overly inclusive, without a
> charging document that narrows the charge to
> generic limits, the only certainty of a generic finding
> lies . . . in the defendant's own admissions or
> accepted findings of fact confirming the factual basis
> for a valid plea.

*Id.* at 1088-89 (internal quotation marks and citations omitted)

---

[7]Count One in the June 1, 2000, felony complaint states:

On or about May 31, 2000, in the County of Los Angeles, the
crime of UNLAWFUL DRIVING OR TAKING OF A VEHI-
CLE, in violation of VEHICLE CODE SECTION 10851(a), a
Felony, was committed by NOPRING PAULINO PENULIAR,
who did unlawfully drive and take a certain vehicle, to wit, 1994
FORD ESCORT, LICENSE #3GUM326, then and there the per-
sonal property of MARHVIN ATIENZA without the consent of
and with intent, either permanently or temporarily, to deprive the
said owner of title to and possession of said vehicle.

Count Three of the November 21, 2000, criminal information is identical
in its language, except that it lists a different car, license number, and
owner.

(second bracket and second ellipsis in original). We further noted:

> California case law indicates that California prosecutors regularly employ generic charging language similar to that alleged in the 1994 Complaint when prosecuting section 10851(a) offenses. In light of this apparent standard prosecutorial practice, we cannot conclude from the 1994 charging document, which likewise simply recited the statutory elements of the offense and inserted the victim's name and car description, that Vidal admitted to the facts as generically alleged.

*Id.* at 1088 n.27 (internal citations omitted). As in *Vidal*, the charging documents for both § 10851(a) convictions in this case simply recited the statutory elements of the offense and inserted the victim's name and car description. Accordingly, the June 2000 complaint and the November 2000 information are insufficient to prove that Penuliar pled guilty to § 10851(a) as a principal, rather than an accessory after the fact.

**[13]** Similarly, the abstracts of judgment for both convictions, which simply recite that Penuliar pled guilty to § 10851(a), cannot establish what facts Penuliar admitted in his guilty plea. *See Vidal*, 504 F.3d at 1087 ("In order to identify a [§ 10851] conviction as the generic offense through the modified categorical approach, when the record of conviction comprises only the indictment and the judgment, the judgment must contain "the critical phrase 'as charged in the Information.' "). Without a plea transcript or other evidence demonstrating the theory under which Penuliar pled guilty, we cannot find that Penuliar pled guilty to § 10851(a) as a principal.

Another panel of our court recently applied the modified categorical approach to a § 10851(a) conviction in *Arteaga v.*

*Mukasey*, 511 F.3d 940 (9th Cir. 2007). *Arteaga* was decided two months after *Vidal*. After reviewing the evidence of conviction before the IJ, the *Arteaga* panel concluded that *Vidal* was "inapposite" because "applying the *Taylor* modified categorical approach to the facts here reveals that Arteaga was convicted of a theft offense." 511 F.3d at 947. In support, the *Arteaga* panel cited *Taylor*, 495 U.S. at 602, for the proposition that "a predicate conviction qualifies as a generic crime if either its statutory definition substantially corresponds to the generic definition, or the charging paper and jury instructions required the jury to find all elements of the generic crime in order to convict." 511 F.3d at 947-48.

*Arteaga* did not describe the record before it concerning the conviction or explain what in the record of conviction indicated that the offense of conviction was a generic theft offense. *Arteaga* is therefore not precedent with regard to application of the *Taylor* modified categorical approach to any particular kind of documents or any specific language appearing in those documents. Legal rulings in a prior opinion are applicable to future cases only to the degree one can ascertain from the opinion itself the reach of the ruling. Where the underlying facts do not appear, later courts are bound by any rule of law explicitly announced, but not by the application of that law to unstated factual circumstances. *Cf. Hart v. Massanari,* 266 F.3d 1155, 1172 (2001) (stating that to determine whether an opinion represents "controlling authority [courts] must parse precedent in light of the facts presented and the rule announced"); *In re Osborne,* 76 F.3d 306, 309 (9th Cir. 1996) ("Insofar as precedent is concerned, stare decisis is important only for the decision, for the detailed legal consequence following a detailed set of facts.").

**[14]** There was no evidence before the IJ "unequivocally" establishing that Penuliar was convicted of a "theft offense" under 8 U.S.C. § 1101(a)(43)(G). *Martinez-Perez*, 417 F.3d at 1028. Therefore, we must conclude that the IJ erred in finding

that Penuliar was removable as an "aggravated felon" under 8 U.S.C. § 1227(a)(2)(A)(iii).

## CONCLUSION

In sum, we hold that evading an officer in violation of California Vehicle Code § 2800.2(a), is not categorically a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F). We also hold that the evidence was insufficient to establish that Penuliar pled guilty to a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G). We thus conclude that the BIA erred in affirming the IJ's decision that Penuliar pled guilty to a "crime of violence" or a "theft offense" under the INA.

**PETITION GRANTED.**